UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

WESTERN DIVISION

| | | |
|---|---|---|
| ELIZABETH COMER-BECKETT, as assignee of Richard and Gail Martin and in her own right, RICHARD MARTIN, and GAIL MARTIN, | ) ) ) ) ) ) | CIV. 11-5017-JLV |
| Plaintiffs, | ) ) ) | ORDER |
| vs. | ) ) | |
| STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY, | ) ) ) ) | |
| Defendant. | ) | |

**INTRODUCTION**

Plaintiffs Elizabeth Comer-Beckett, as assignee of Richard and Gail Martin and in her own right, Richard Martin, and Gail Martin (either "plaintiffs," "Ms. Comer-Beckett," or "Martins" where a separate designation is appropriate) filed a two-count complaint against defendant State Farm Mutual Automobile Insurance Company ("State Farm"). (Docket 1). Plaintiffs' claims are a common law bad faith claim ("bad faith claim") and an abuse of process claim ("abuse of process claim"). Id. at ¶¶ 149-54.

State Farm filed a motion to apply Minnesota state law to the bad faith claim. (Docket 45). "State Farm is not challenging the application of

1

South Dakota law to Plaintiffs' abuse of process claim . . . ." (Docket 46 at p. 6 n. 5) (internal quotation marks omitted).  The court held a hearing to consider oral argument on the motion.  After consideration of the arguments of counsel and for the reasons stated below, State Farm's motion is granted.

## FACTUAL BACKGROUND

This case originates from an automobile accident on August 27, 2004, in South Dakota. (Docket 1 at ¶¶ 1 & 7).  Mr. Martin's Dodge Ram pickup rear-ended a vehicle driven by Ms. Comer-Beckett. Id. at ¶ 7.  As a result of the collision, Ms. Comer-Beckett was injured. Id. at ¶ 9.  The Martins' pickup was insured by a State Farm automobile insurance policy. Id. at ¶ 6; see also Docket 47-3 (the "State Farm policy").  The State Farm policy had a $100,000 per person liability coverage limit for bodily injury claims. (Docket 47-3 at p. 3).

It is not necessary for purposes of this order to state in detail the chronology of the personal injury litigation which ensued.  Ms. Comer-Beckett and State Farm were unable to settle her claim.  On April 4, 2008, a Stanley County Circuit Court jury returned a verdict for $150,000 for Ms. Comer-Beckett. (Docket 47-11 at p. 2).  The Circuit Court Judge entered a judgment in favor of Ms. Comer-Beckett against Mr. Martin for that amount on April 10, 2008 (the "personal injury judgment"). (Docket 47-12 at p. 2). In May of 2008, Ms. Comer-Beckett and the Martins signed an agreement for the assignment of causes of action/covenant not to execute (the

"assignment agreement"). (Docket 47-14). Under the assignment agreement the Martins assigned all causes of action against State Farm arising from the handling of the personal injury case to Ms. Comer-Beckett. Id. at ¶ 1. The Martins retained any claims they may have against State Farm for emotional distress and attorney's fees expended by them in defense of the personal injury case. Id. at ¶ 2. Finally, Ms. Comer-Beckett agreed to not execute her personal injury judgment against the personal assets of Mr. Martin. Id. at ¶ 7.

## DISCUSSION

The State Farm policy and the assignment agreement, together with the alleged misconduct of State Farm, form the basis for plaintiffs' bad faith claim. (Docket 1). The parties acknowledge South Dakota and Minnesota have different laws associated with third-party bad faith claims.[1] See Dockets 46 at p.1; 50 at p. 1.

---

[1] "[I]nsurance bad faith actions are classified as either first-party or third-party claims. . . . A first-party coverage situation arises when an insurance company contracts to pay benefits directly to an insured. . . . First-party bad faith occurs when an insurance company consciously engages in wrongdoing during its processing or paying of policy benefits to its insured. . . . By contrast, a third-party coverage situation arises when an insurance company contracts to indemnify an insured against liability to third parties. . . . And third-party bad faith occurs when an insurer breaches its duty to give equal consideration to the interests of its insured when making a decision to settle a case brought against its insured by a third party." Bertelsen v. Allstate Insurance Co., 796 N.W.2d 685, 700 (S.D. 2011) (internal quotation marks and citations omitted). See also Hein v. Acuity, 731 N.W.2d 231, 235 (S.D. 2007).

**SOUTH DAKOTA LAW ON BAD FAITH**

Under South Dakota law, a bad faith claim may be pled as an independent tort action. In South Dakota, "the tort of bad faith is an intentional tort . . . ." Isaac v. State Farm Mutual Automobile Insurance Co., 522 N.W.2d 752, 760 (S.D. 1994). "South Dakota law recognizes a cause of action for an insurer's bad faith in refusing to settle a claim within policy limits, and permits recovery when the interests of the insured and the insurer are not given equal consideration." Kirchoff v. American Casualty Co., 997 F.2d 401, 404 (8th Cir. 1993). "[W]e believe the correct judicial path to be that which allows a cause of action against an insurance company for bad faith failure to pay a claim." Matter of Certification of a Question of Law from the United States District Court, District of South Dakota, Western Division, 399 N.W.2d 320, 322 (S.D. 1987). "[T]he better rule is that an insurer's violation of its duty of good faith and fair dealing constitutes a tort, even though it is also a breach of contract. Such tortious conduct is demonstrated where there is unreasonable delay in performing under a contract, including delays in settlement under a liability policy." Id. (internal citation omitted). In South Dakota, compensatory damages for emotional distress and punitive damages may be awarded when an insurer acts in bad faith. Athey v. Farmers Insurance Exchange, 234 F.3d 357, 362-63 (8th Cir. 2000).

4

**MINNESOTA LAW ON BAD FAITH**

In Minnesota, a third-party bad faith claim may be asserted where the insurer "fails to exercise 'good faith' in considering offers to compromise the claim . . . within the policy limits." Short v. Dairyland Insurance Co., 334 N.W.2d 384, 387 (Minn. 1983). "This duty to exercise 'good faith' includes an obligation to view the situation as if there were no policy limits applicable to the claim, and to give equal consideration to the financial exposure of the insured." Id. at 387-88.

"[A]n alleged bad-faith breach of contract cannot be the basis for tort liability under Minnesota law." Miller v. ACE USA, 261 F. Supp. 2d 1130, 1140 (D. Minn. 2003). "[E]xtra-contract damages are not recoverable for breach of contract except in exceptional cases where the breach is accompanied by an independent tort." Haagenson v. National Farmers Union Property & Casualty Co., 277 N.W.2d 648, 652 (Minn. 1979). "Minnesota common law, at least until now, follows the traditional rule that a bad faith breach of contract does not convert the breach of contract into a tort . . . ." Morris v. American Family Mutual Insurance Co., 386 N.W.2d 233, 237 (Minn. 1986) (citing Haagenson, 277 N.W.2d at 652). "If an insurer fails to settle in good faith with a third-party claimant, the insured can bring a bad faith action against the insurer; further, the claimant can take an assignment of the insured's bad faith claim and maintain the insured's action against the insurer." Id.

In Minnesota, compensatory damages for emotional distress and punitive "damages are not recoverable in a bad-faith breach of contract." Haagenson, 277 N.W.2d at 652 (internal references omitted). "In general, extra-contractual damages, including those for emotional distress, are not recoverable for breach of contract except in those rare cases where the breach is accompanied by an independent tort." Lickteig v. Alderson, Ondov, Leonard & Sween, P.A., 556 N.W.2d 557, 561 (Minn. 1996) (citing Haagenson, supra, among others). The "independent tort . . . must support the extra-contractual damages in its own right as a tort." Id. "[E]ven a malicious or bad-faith motive in breaching a contract does not convert a contract action into a tort action sufficient to support an award of emotional distress damages . . . or other extra-contractual damages, such as punitive damages . . . ." Id. (citing Haagenson, 277 N.W.2d at 652; other citations omitted).

**CONFLICT OF LAWS**

The parties acknowledge that Minnesota and South Dakota have conflicting laws on third-party bad faith claims. (Dockets 46 at p. 13 & 50 at p. 3). The parties agree complete diversity exists between plaintiffs and State Farm and this court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332. (Dockets 1 at ¶ 5 & 13 at ¶ 5).

6

The State Farm policy does not contain place of performance or choice-of-law selection provisions. (Dockets 46 at p. 15 & 47-3). "Because suit was brought in this federal district, South Dakota is the forum state and its choice-of-law rules are applied to determine the rights of the parties in this action." St. Paul Reinsurance Co., Ltd. v. Baldwin, 503 F. Supp. 2d 1255, 1261 (D.S.D. 2007) (referencing Allianz Insurance Co. of Canada v. Sanftleben, 454 F.3d 853, 855 (8th Cir. 2006)).  See also Klaxon Co. v. Stentor Electric Manufacturing Co. 313 U.S. 487, 496 (1941) ("The conflict of laws rules to be applied by the federal court in Delaware must conform to those prevailing in Delaware's state courts.  Otherwise the accident of diversity of citizenship would constantly disturb equal administration of justice in coordinate state and federal courts sitting side by side.").

"SDCL 53-1-4 provides the choice of law regarding contracts under South Dakota law." Union Pacific Railroad v. Certain Underwriters at Lloyd's London, 771 N.W.2d 611, 618 (S.D. 2009).  That section provides:

> A contract is to be interpreted according to the law and usage of the place where it is to be performed or, if it does not indicate a place of performance, according to the law and usage of the place where it is made.

SDCL § 53-1-4.  "[I]f a place of performance cannot be discerned from the contract, the contract should be interpreted according to the law of the place where it was made." Anderson v. Taurus Financial Corp., 268 N.W.2d 486, 488 (S.D. 1978).  "Assuming that a place of performance could not be

gleaned from [the] contract . . . . [u]nder South Dakota law, the test of where a contract is made is the situs of the last act necessary, to give the contract validity." Id.  "The test of the place of a contract is the place where the last act is done by either of the parties which is necessary to complete the contract and give it validity." Briggs v. United Services Life Insurance Co., 117 N.W.2d 804, 807 (S.D. 1962).

While plaintiffs object to the application of the contract choice-of-law test, they do not dispute the following factual statements:

1. The Martins are and were residents of Remer, Minnesota, when they completed an application to purchase the State Farm policy;

2. The State Farm agent who issued the State Farm policy to Martins was located in Walker, Minnesota;

3. Martins paid the premiums for the State Farm policy while residents of Minnesota; and

4. The State Farm policy was delivered to the Martins in Minnesota.

See Dockets 47-1 at ¶ 2; 47-2 at pp. 3 (8:3-9), 4 (20:1-4), 5(22:8-10); 50 at pp. 11-13).

This is the same fact pattern deemed relevant in Great West Casualty Co. v. Hovaldt, 603 N.W.2d 198 (S.D. 1999).  "[T]he policy with a standard South Dakota . . . [coverage] was delivered in South Dakota, by a South Dakota insurance agent, for the benefit of a South Dakota [corporation] . . . , to cover vehicles licensed and principally garaged in South Dakota." Id. at

201.  "The last act necessary to complete the contract took place in South Dakota.  Therefore, South Dakota law applies."  Id.  The same result occurs when applying the rational of Baldwin.  "Here, the . . . liability insurance policy was delivered in South Dakota, by a South Dakota insurance agent, for the benefit of a South Dakota sole proprietorship, whose owner resides in Sturgis, South Dakota. . . . [T]he last act necessary to finalize the insurance contract transpired in South Dakota.  Therefore, South Dakota law applies."  Baldwin, 503 F. Supp. 2d at 1261.

Applying the contract choice-of-law factors of Hovaldt and Baldwin, the State Farm policy was delivered in Minnesota, by a Minnesota insurance agent, for the benefit of Minnesota residents whose vehicles are licensed and principally garaged in Minnesota.  "The last act necessary to complete the contract took place in" Minnesota.  Hovaldt, 603 N.W.2d at 201; Baldwin, 503 F. Supp. 2d at 1261.  Minnesota law should apply.

Plaintiffs argue this case is not a contract suit but litigation based on a bad faith claim, that is, tort liability.  (Docket 50 at p. 3).  "[T]he relevance of the contract is that it gives rise to a set of duties; and under South Dakota law, the intentional or reckless breach of those duties is a tort." (Docket 50 at p. 4) (citing Champion v. United States Fidelity & Guaranty Co., 399 N.W.2d 320, 322-23 (S.D. 1987)).  "Because bad faith is a *tort* in South Dakota, the relevant choice-of-law principle is that used in South

9

Dakota to determine the applicable law in a claim involving a multistate *tort*; and that principle is the 'most significant relationship' test." Id. (emphasis in original).

In Chambers v. Dakotah Charter, Inc., 488 N.W.2d 63 (S.D. 1992), the court "adopt[ed] the most significant relationship approach to govern multi-state tort conflicts."[2] Id. at 67. Under the most significant relationship approach:

> (1) The rights and liabilities of the parties with respect to an issue in tort are determined by the local law of the state which, with respect to that issue, has the most significant relationship to the occurrence and the parties under the principles stated in § 6.
>
> (2) Contacts to be taken into account in applying the principles of § 6 to determine the law applicable to an issue include:
>
> > (a) the place where the injury occurred,
> >
> > (b) the place where the conduct causing the injury occurred,
> >
> > (c) the domicil, residence, nationality, place of incorporation and place of business of the parties, and
> >
> > (d) the place where the relationship, if any, between the parties is centered.
>
> These contacts are to be evaluated according to their relative importance with respect to the particular issue.

---

[2]In Chambers, South Dakota abandoned *lex loci delecti* as its choice of law rule. Id. at 66. *Lex loci delicti* is " 'the place of the wrong' rule." Heidemann v. Rohl, 194 N.W.2d 164, 167 (1972).

Id. at 67-68 (citing Restatement (Second) of Conflict of Laws § 145 (1971)).

The analysis under section 6 of the Restatement considers the following principles:

> (1) A court, subject to constitutional restrictions, will follow a statutory directive of its own state on choice of law.
>
> (2) When there is no such directive, the factors relevant to the choice of the applicable rule of law include
>
>> (a) the needs of the interstate and international systems,
>>
>> (b) the relevant policies of the forum,
>>
>> (c) the relevant policies of other interested states and the relative interests of those states in the determination of the particular issue,
>>
>> (d) the protection of justified expectations,
>>
>> (e) the basic policies underlying the particular field of law,
>>
>> (f) certainty, predictability and uniformity of result, and
>>
>> (g) ease in the determination and application of the law to be applied.

Id. at 68 (citing Restatement (Second) of Conflict of Laws § 6 (1971)).

Plaintiffs argue the state with the most significant relationship to plaintiffs' bad faith claim is South Dakota. (Docket 50 at p. 5). Applying the Restatement (Second) § 145 contacts, plaintiffs arrive at the following conclusions:

11

(a) <u>Place where the injury occurred</u>: "[T]he *injuries* alleged in Plaintiffs' bad faith cause of action occurred almost exclusively in South Dakota."  (Docket 50 at p. 11) (emphasis in original);

(b) <u>Place where the conduct causing the injury occurred</u>: "The conduct causing the injury was engaged in by State Farm adjuster's [sic] and claims managers operating out of Nebraska, working through Rapid City, South Dakota attorneys retained to defend a South Dakota personal injury claim being litigated in Stanley County, South Dakota. . . . The place where the conduct causing the injury occurred was South Dakota." <u>Id.</u> at pp. 11-12;

(c) <u>The domicil, residence, nationality[,] place of incorporation and place of business of the parties</u>: "State Farm is an Illinois corporation. . . . Martins' primary residence is Minnesota, but they maintain a recreational property in South Dakota. . . . Elizabeth Comer-Beckett . . . is a South Dakota citizen. . . . Of the . . . states implicated by this 'contact,' South Dakota has the greatest connection." <u>Id.</u> at pp. 12-13.

(d) <u>The place where the relationship, if any, between the parties is centered</u>: "The contract was formed between the Martins, permanent residents of Minnesota and part-time residents of South Dakota, and State Farm, an Illinois corporation handling the claim . . . out of Nebraska; and, so, Minnesota, Illinois, and Nebraska are all possible centers of the parties' relationship.  However, . . . Elizabeth Comer-Beckett, who is also a party to the cause of action at issue, as well as the holder of her own abuse of process cause of action against State Farm, has a relationship with State Farm that is centered in South Dakota. . . . South Dakota is the 'center' of the relationship between the parties." <u>Id.</u> at p. 13.

With regard to the section 6 factors of the <u>Restatement (Second)</u>, plaintiffs summarily refer the court to pages six and seven of their brief for a listing of relevant factors and principles and conclude "it is clear that should

12

the Court apply South Dakota bad faith law over that of Minnesota law, the Court would be satisfying the requirements of the most significant relationship test, while providing certainty, predictability, and uniformity of the result, and would promote the interests of the policies of the forum state (South Dakota) and of the interstate and international system." Id. at p. 15.

Plaintiffs cite to a number of cases in support of their argument. (Docket 50 at p. 12). The authorities cited by plaintiffs involve liability claims different from the bad faith claim alleged in the present litigation. Lane v. Celadon Trucking, Inc., 543 F.3d 1005 (8th Cir. 2008) (involved a choice-of-law resolution concerning a worker's compensation subrogation lien); Bates v. Superior Court of State of Ariz., In & For Maricopa County, 749 P.2d 1367 (Ariz. 1988) (*en banc*) (involves a first-party bad faith claim); Brown v. National Car Rental System, Inc., 707 So. 2d 394 (Fla. Dist. Ct. App. 1998) (involved a third-party liability coverage issue); and State Farm Mutual Automobile Insurance Co. v. Olsen, 406 So. 2d 1109, 1111 (Fla. 1981) (involved resolution of whether Florida comparative negligence, which would allow a wrongful death claim to proceed, and Illinois' contributory negligence law, which would bar the claim, should apply).

A bad faith claim "not only derives from the contract, but is defined by the contractual obligation of good faith, [thus] any attempt to assess liability [in the tort claim] inevitably will involve contract interpretation." Allis-

Chalmers Corp. v. Lueck, 471 U.S. 202, 218 (1985).  "[N]early any alleged willful breach of contract can be restated as a tort claim for breach of a good-faith obligation under a contract . . . ."  Id. at 219.  "The right . . . assert[ed] is rooted in contract, and the bad-faith claim . . . could have been pleaded as a contract claim . . . ."  Id. at 220.

"The South Dakota Supreme Court in Champion clearly established that the tort of bad faith is dependent on an underlying contractual relationship between insurer and insured."  Johnson v. Viking Ins. Co. of Wisconsin, 706 F. Supp. 720, 721 (D.S.D. 1989).  "Conduct that is merely a breach of contract is not a tort.  *The contract, however, may establish a relationship* demanding the exercise of proper care and acts and omissions in performance may give rise to a tort liability."  Id. (citing Champion 399 N.W.2d at 322) (internal citation omitted) (emphasis in original).  See also Kunkel v. United Security Insurance Co. of New Jersey, 168 N.W.2d 723, 726 (S.D. 1969).

"Even when a liability policy that covers vehicles moving across state lines fails to include a choice-of-law provision, it is nevertheless reasonable to assume that the contracting parties did not intend the legal issues which inevitably would arise under the contract to be governed by the disparate laws of the various states through which the insured vehicles would pass.  At least with respect to contractual disputes, applying the law of the state in

14

which the liability insurance contract was formed affords the contracting parties a degree of stability and certainty which would otherwise be lacking." Ryder Truck Rental, Inc. v. UTF Carriers, Inc., 790 F. Supp. 637, 641-42 (W.D. Va. 1992) (referencing Boseman v. Connecticut General Life Insurance Co., 301 U.S. 196, 206 (1937) ("choice of law of the state in which an insurance contract was formed was based in part on a policy of supporting the parties' intent that it should 'have the same meaning and give the same protection, and that inequalities and confusion liable to result from applications of diverse state laws [should] be avoided.' ").

"[T]he protection of justified expectations" factor from the Restatement weighs heavily in favor of Minnesota law. Restatement (Second) of Conflict of Laws § 6(2)(d) (1971)). State Farm is involved in this litigation solely because of a contract with a Minnesota resident insuring Minnesota property. Both parties to the contract would be justified in believing Minnesota law would govern the responsibilities of State Farm in the application of the policy.[3]

---

[3]Addressing a "mandated uninsured motorist coverage" issue, the South Dakota Supreme Court concluded the uninsured motorist statutes do not "force[] the conclusion that it is the policy of this state that our mandated uninsured motorist coverage must apply to policies not issued for delivery in South Dakota for vehicles not registered or principally garaged in this state." Milinkovoch v. Progressive Casualty Insurance Co., 827 N.W.2d 366, 368 (S.D. 2013). "Our laws do not support altering the terms of parties' contracts in these circumstances." Id.

15

This conclusion is important because the Martins cannot assign to Ms. Comer-Beckett any greater rights than Martins possess under the State Farm contract. See Illinois Farmers Ins. Co. v. Glass Serv. Co., Inc., 669 N.W.2d 420, 424 (Minn. Ct. App. 2003) *aff'd in part, rev'd in part sub nom.* Illinois Farmers Ins. Co. v. Glass Serv. Co., 683 N.W.2d 792 (Minn. 2004) ("It is black-letter law that an assignee of a claim takes no other or greater rights than the original assignor and cannot be in a better position than the assignor."); Illinois Farmers Ins. Co., 683 N.W.2d at 803 ("An assignment operates to place the assignee in the shoes of the assignor, and provides the assignee with the same legal rights as the assignor had before assignment.") (emphasis added).

The Martins may possess a breach of contract claim against State Farm based on the carrier's refusal to pay. But they cannot assign any greater rights to Ms. Comer-Beckett than the Martins themselves have against State Farm. Before the assignment agreement, the Martins' claims against State Farm would have been resolved under Minnesota law. When Ms. Comer-Becket stepped into their shoes, she acquired nothing more than the rights held by the Martins as determined under Minnesota law. Illinois Farmers Ins. Co., 683 N.W.2d at 803.

For these reasons, plaintiffs' bad faith claims against State Farm must be resolved through the application of Minnesota's substantive law on such claims. SDCL § 53-1-4; Haagenson, supra.

## ORDER

Based on the above analysis, it is hereby

ORDERED that defendant's motion (Docket 45) is granted.

Dated June 19, 2013.

       BY THE COURT:

       /s/ *Jeffrey L. Viken*
       JEFFREY L. VIKEN
       CHIEF JUDGE